FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 09, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHELE RAE DICKENS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

No.   1:16-cv-03225-SMJ

**ORDER GRANTING PLAINTIFF'S
SUMMARY JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY JUDGMENT MOTION**

Plaintiff Michele Rae Dickens appeals the administrative law judge's (ALJ) decision denying her application for Social Security Disability benefits. She alleges the ALJ improperly gave little weight to portions of two medical opinions, found that Dickens's symptom testimony was not credible, and discredited the opinion of Dickens's husband, William Dickens. Because the ALJ made a consequential error—finding that Dickens did not continue treatment after August 2013, without considering evidence in the record that Dickens stopped seeking primary treatment because she lost her insurance and had no means to pay for treatment—that infected multiple portions of the ALJ's analysis, the ALJ's decision is reversed and remanded for further proceedings.

SUMMARY JUDGMENT ORDER - 1

# I.    BACKGROUND[1]

Dickens filed an application for disability and disability insurance benefits on May 13, 2013, alleging disability beginning on October 31, 2012. Tr. 19. She asserts that she is disabled because of severe and unpredictable panic attacks that occur at least 40 times per month. Tr. 24, 194, 218–19. She also reports severe migraine headaches that have not responded to treatment, back pain, and dizziness. Tr. 24, 194, 216–19. These reported conditions cause Dickens severe head pain. Tr. 24, 216-219.

The Social Security Administration denied Dickens's claim initially on July 8, 2013, and on reconsideration on November 11, 2013. Tr. 19. Dickens filed a request for a hearing on November 11, 2013. *Id.*  A hearing was held before an ALJ on March 31, 2015, in Yakima, Washington. *Id.* On September 22, 2015, the ALJ issued a decision finding that Dickens was not disabled and she was ineligible for disability benefits. Tr. 30. Dickens filed a request for review with the Social Security Administration's Appeals Council. Tr. 13. The Appeals Council denied Dickens's request for review on October 28, 2016. Tr. 1. Dickens appealed to this Court on December 27, 2016. ECF No. 3.

---

[1] The facts and procedural history are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

## II. DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the

claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### III. ALJ FINDINGS

At step one, the ALJ found that Dickens has not engaged in substantial gainful activity since October 31, 2012, her alleged onset date. Tr. 21. At step two, the ALJ found that Dickens has the following severe impairments: migraines/headaches; obesity; anxiety disorder; and somatoform disorder. Tr. 22. The ALJ also found that Dickens has non-severe hypertension and degenerative disc disease. *Id.*

At step three, the ALJ found that Dickens does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. *Id.* In considering whether Dickens's mental impairments meet or medically equal the criteria for listings 12.06 and 12.07, the ALJ considered the "paragraph B" criteria—whether the mental impairments result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. *Id.* The ALJ concluded they do not. Tr. 22–23. The ALJ first found that Dickens has no restrictions of daily living. The ALJ explained that "although she has physical

limitations in completing her personal care, her mental impairments do not affect her ability to dress, bathe, engage in in hair care, eat and/or use the bathroom." Tr. 23. The ALJ noted that Dickens occasionally helps care for her husband and daughter, prepares basic meals, and does routine, household chores. *Id.* The ALJ next found that Dickens has moderate difficulties with social functioning. But the ALJ noted that Dickens goes outside daily and does not need to be accompanied when going places. *Id.* The ALJ further noted that Dickens does not have difficulty getting along with family, friends, neighbors or others; she gets along well with authority figures; she has never been fired or laid-off from a job because of personal problems getting along with others; and she handles stress and changes in routine well. *Id.* The ALJ next found that Dickens has mild to moderate difficulties with concentration, persistence, or pace. *Id.* The ALJ explained that she drives, can count change, finishes what she starts, and is able to pay attention for at least two hours. *Id.* The ALJ further noted that Dickens follows written instructions very well, although she has difficulty following spoken instructions. *Id.* Finally, the ALJ found that Dickens had not experienced any episodes of decompensation. *Id.*

At step four, the ALJ found that Dickens has the residual functional capacity to perform light work, including the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk or sit for 6 hours in a day; climb ramps and stairs; balance, stoop, and crawl; and have occasional, superficial contact with

the public. Tr. 24. After considering Dickens's symptom testimony and the medical evidence, the ALJ concluded that Dickens's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but the ALJ found that Dickens's allegations concerning intensity, persistence, and limiting effects of the symptoms were not entirely credible and that the medical evidence demonstrates that she retains the residual functional capacity to perform light, unskilled tasks with limited social interaction. Tr. 25. In reaching this conclusion, the ALJ found that the medical evidence did not demonstrate severe symptoms and that Dickens's testimony was not entirely credible. Tr. 26. The ALJ gave significant weight to the state-agency, reviewing-physician opinions from Drs. Jan Lewis, and John Robinson and the state-agency reconsideration opinion from Dr. Norman Staley. Tr. 26–27. The ALJ gave significant weight to some portions of Dickens's treating physician, Dr. Williams's, opinion, but gave little weight to other portions of his opinion. Tr. 27. The ALJ similarly gave weight to some portions of examining neurologist, Dr. Sloop's, opinion, while giving little weight to other portions. TR. 27–28. The ALJ gave some weight to the lay opinion of Dickens's husband, William Dickens. Tr. 28.

The ALJ found that Dickens is unable to perform any past relevant work because the demands of her previous occupations exceed her maximum residual functional capacity. Tr. 28. The ALJ therefore proceeded to step five, where the

ALJ found that jobs exist in significant numbers in the national economy that Dickens can perform, including the representative occupations "cleaner/housekeeping," "packing line worker," and "mail clerk." Tr. 29. Because the ALJ found that Dickens is capable of making a successful adjustment to other work that exists in the national economy, the ALJ found that Dickens was not disabled. Tr. 30.

## IV. STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

# V.    ANALYSIS

Dickens challenges (1) the ALJ's decision to give little weight to portions of Dr. Williams's and Dr. Sloop's opinions; (2) the ALJ's finding that her symptom testimony was not credible; and (3) the ALJ's decision to reject the opinion of her husband, William Dickens. As discussed below, the ALJ made a common error in assigning little weight to much of Dr. Williams's testimony, finding Dickens's testimony not credible, and in weighing William Dickens's statements—the ALJ improperly found that Dickens did not continue treatment after August 2013 without considering evidence in the record that Dickens stopped seeking primary treatment because she lost her insurance and had no means to pay for treatment. Because these errors were not harmless the ALJ's decision must be reversed and remanded for further proceedings.

## A.    The ALJ erred in rejecting portions of Dr. Williams's opinion but properly gave less weight to portions of Dr. Sloop's opinion.

Dickens argues that the ALJ improperly discounted the treating and examining medical opinions of Dr. Williams and Dr. Sloop and relied solely on the non-examining consulting physician's opinions. ECF No. 16 at 7. The Commissioner argues that the ALJ gave specific and legitimate reasons to reject Dr. William's and Dr. Sloop's opinions. ECF No. 20 at 3. The Commissioner further argues that the ALJ did not consider *solely* the opinions of non-examining physicians, the ALJ also considered objective medical evidence, Dickens's

subjective statements and symptoms, and Dickens's ability to perform daily activities. ECF No. 20 at 4.

The Commissioner is correct that the ALJ considered factors other than the opinions of non-examining physicians in assessing Dickens's limitations, but this does not alter the Court's review of the ALJ's decision to reject portions of the opinions of Dr. Williams and Dr. Sloop. "[T]he opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(c); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001)). An ALJ cannot reject a treating or examining physician's opinion, even if it is contradicted by another physician, without setting forth specific and legitimate reasons supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

### 1. The ALJ improperly rejected portions of Dr. Williams's opinion.

Dr. Williams was a consultative examining physician, who examined Dickens in June 2013. Tr. 340–42. Dr. Williams concluded that Dickens's impairments markedly limited her ability to respond appropriately in work situations. Tr. 341. He also assigned a GAF score of 45–50. Tr. 338. Dr. Williams concluded that Dickens would benefit from active treatment for her panic attacks,

including medication and psychotherapy and that her somatoform disorder would likely decrease or disappear with effective treatment of the panic disorder. *Id.*

The ALJ gave significant weight to Dr. Williams's opinion that Dickens would benefit from therapy to treat panic disorder and that Dickens's "somatoform disorder would 'likely decrease or disappear with effective treat [sic] of the panic disorder.'" *Id.* But the ALJ gave little weight to the remainder of Dr. Williams's opinion. *Id.*

Dickens argues that the ALJ failed to give specific and legitimate reasons for rejecting the examining medical opinion of Dr. Williams. ECF No. 16 at 9–16. The Commissioner counters that the ALJ gave specific and legitimate reasons to reject Dr. Williams's opinion. ECF No. 20 at 3. It is clear, and Dickens does not directly dispute, that ALJ gave numerous specific reasons for rejecting most of Dr. Williams opinion. Instead, Dickens's challenge appears to be that each of these specific reasons was inadequate. As discussed below, each of the ALJ's reasons is legitimate and supported by substantial evidence except for one—that Dickens did not continue treatment. Because this error was not harmless, the ALJ erred by giving less weight to Dr. Williams's opinion.

The ALJ rejected portions of Dr. Williams's opinion based on a finding that the opinion "did not adequately explain how, given his own mental status exam findings in conjunction with [Dickens's] daily activities, she has 'marked' mental health limitations." Tr. 27. Dickens argues that the ALJ's reasoning is erroneous because Dr. Williams's opinion expressly addresses what Dickens can still do despite her impairments. ECF No. 16 at 9. Dickens also argues that the ALJ disregarded the fact that Dr. Williams provided explanation for his marked-limitation finding. *Id.* at 11. In fact, the ALJ did not disregard these facts, the ALJ expressly noted that Dr. Williams included an explanation, but that it was inadequate. The ALJ explained:

> In checking the box that the claimant has a "marked" limitation with responding appropriately to usual work situations and to changes in a routine work setting, the brief handwritten comments that he did include are not adequately reconciled with her own recitation of daily activities as stated at Finding 4.

Tr. 27. The ALJ's finding is legitimate and supported by substantial evidence.

Dickens further argues that the medical record shows that Dickens has symptoms consistent with Dr. Williams's opinion, including frequent and debilitating panic attacks, constant headaches, and significantly elevated blood pressure resulting from her psychological impairments. ECF No. 16 at 10. The

Court agrees that the medical record does indeed provide evidence supporting some of Dickens's symptoms. *See* Tr. 265–66, 280–86, 295–300, 329–31, 349–50, 352–59, 372–77. But this is not a basis to reverse the ALJ's finding that Dr. Williams's opinion did not adequately explain its marked-limitation finding.

        b.     *The ALJ appropriately considered the check-box form used by Dr. Williams.*

The ALJ criticized a check-box form used by Dr. Williams. Specifically, the ALJ explained:

> Greater weight is assigned to the opinions from the state-agency examiners, because they provided a concise, narrative analysis of the claimant's maximum mental RFC with citations to credible, persuasive evidence record. The check-box form that dr. Williams attached to his report does the reverse in that it lists the least and not the most the claimant can still do.

Tr. 27.

Dickens argues that the ALJ improperly disregarded the check-box form, ECF No. 16 at 10. As Dickens points out, the Ninth Circuit held in *Burell v. Colvin*, that brevity and lack of detail in a "check-box form" are not sufficient reasons by themselves to disregard the form if the physician's opinion is supported by the record. 775 F.3d 1133, 1140 (9th Cir. 2014). But the ALJ did not disregard the form, she simply relied on the lack of detail there, along with other factors, to assign Dr. Williams's opinion less weight.

c. *The ALJ properly relied on inconsistency between Dr. Williams's mental-status exam results and the marked-limitation finding.*

The ALJ found that "Dr. Williams did not adequately explain how, given his own mental status exam findings in conjunction with [Dickens's] daily activities, she has 'marked' mental health limitations.'" Tr. 27. Dickens argues that Dr. Williams's findings are consistent with his examination and that the ALJ lacks the medical expertise to evaluate the clinical significance of his examination and interview findings. ECF No. 16 at 12. The Commissioner argues that it is within the ALJ's discretion to reject a doctor's opinion if it is contradicted by the doctor's own clinical notes or recorded observations. ECF No. 20 at 5. The Commissioner is correct that the ALJ may consider whether a doctor's opinion is consistent with his examination findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that discrepancy between clinical notes and opinion was a clear and convincing reason not to rely on the Doctor's opinion). The ALJ did not err by doing so here. And there is no basis for the Court to reject the ALJ's conclusion, which is supported by substantial evidence.

d. *The ALJ's inference that that Dickens may not have been entirely forthcoming with Dr. Williams is supported by substantial evidence.*

The ALJ noted that "[a]s the claimant completed her handwritten function report on June 19, 2013, just two days prior to her exam with Dr. Williams, the

inference is that she may not have been entirely forthcoming with him regarding the most she can still do. Tr. 27. Dickens argues that the ALJ's conclusion that Dickens was not "entirely forthcoming" with Dr. Williams regarding her limitations is unsupported by the record. ECF No. 16 at 13. While there is no affirmative indication that Dickens was not forthcoming with Dr. Williams, the ALJ's factual statement that Dickens's exam with Dr. Williams occurred just two days after she completed her function report is accurate. Dickens cites no authority, and the Court has found none, indicating that an ALJ may not infer from such timing that a claimant is more likely to report symptoms and limitations consistent with the function report. Accordingly, the ALJ's finding is legitimate and supported by substantial evidence.

> e.    *The ALJ properly questioned whether Dr. Williams's evaluation assessed whether Dickens could perform her past work as opposed to any work.*

The ALJ noted that Dickens's "past work in the bakery industry was highly skilled. It is unclear if Dr. Williams was opining that the claimant was markedly limited in these categories with regard to her past work. If so, these limitation are accommodated by the residual functional capacity found herein . . . ." Tr. 27. Dickens argues that the ALJ erred by discounting Dr. Williams's opinion on the basis that it was unclear whether the limitations opinion was in reference to her past work, as opposed to any work-related activities. ECF No. 16 at 13–14. Dickens

argues there is no support for this in the record, and the form Dr. Williams completed clearly explains that the examiner should assess the individual's "ability to do work-related activities on a sustained basis." *Id.* at 13. It is in fact not clear from the record whether Dr. Williams evaluated Dickens's limitations based on her ability to do prior work or her ability to do any work. While the ALJ may have been free to conclude that Dr. Williams was assessing Dickens's ability to perform any work, the record also reasonably supports her conclusion that the baseline of Dr. Williams's evaluation was ambiguous.

> f.    *The ALJ's finding that Dr. Williams's opinion regarding Dickens's onset date is vague is supported by substantial evidence.*

The ALJ concluded that the check-box form in Dr. Williams's opinion was vague because it "lists October 31, 2012, as the 'probable' onset date" without providing "even a sufficient brief, narrative analysis with citations to the record explaining how and why this may be the claimant's onset date." ECF No. 27. Dickens argues that the ALJ erroneously rejected Dr. Williams's opinion as vague because he indicated a probable onset date of 10/31/12, a date that Dickens argues is fully supported by the record. ECF No. 16 at 14. The ALJ's reasoning is supported by substantial evidence. Dr. Williams did not explain the basis for Dickens's onset date.

g.      *The ALJ erred by relying on lack of continuing treatment to reject Dr. Williams's opinion.*

The ALJ concluded that Dickens "has not continued any treatment and there is no crisis related information to show that a high level of dysfunction has continued. Dr. Williams's report is a snap shot in time and does not support a finding of more limitation than that found herein." Tr. 27. Dickens argues that the record is clear that her lack of continued treatment is the result of losing medical insurance, not improvement in symptoms, and that emergency treatment records show that her systems have persisted. ECF No. 16 at 15. The Commissioner concedes that it was error for the ALJ to rely on lack of continuing treatment as a basis for rejecting Dr. Williams's opinion without considering Dickens's alleged inability to pay for treatment since losing insurance coverage. ECF No. 20 at 11. However, the Commissioner argues that this was harmless error because the ALJ relied on other factors to reject Dr. Williams's opinion. ECF No. 20 at 11.

Harmless error analysis applies to Social Security disability cases. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citing *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011); *Molina*, 674 F.3d at 1115). "The nature of that application is fact-intensive—'no presumptions operate' and '[the reviewing court] must analyze harmlessness in light of the circumstances of the case.'" *Id.* (quoting *Molina*, 674 F.3d at 1121). Accordingly, the Court must consider whether the ALJ's error was "'inconsequential to the ultimate nondisability determination' in the

context of the record as a whole." *Molina*, 674 F.3d at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Ninth Circuit "precedents have been cautions about when harmless error should be found." *Marsh*, 792 F.3d at 1170. "'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

In this case, the Court cannot confidently conclude that the ALJ's error was inconsequential to the ultimate nondisability determination. While the ALJ relied on a number of other factors to give Dr. Williams's opinion little weight, failure to continue treatment is plainly a stronger factor militating against a disability determination than many of the others the ALJ relied on. Moreover, as explained in sections V.B and C, the ALJ relied in part on the same erroneous finding to discredit Dickens's symptom testimony and statements by her husband. The ALJ's failure to consider evidence that Dickens did not continue primary treatment because she lost insurance coverage and had no means to pay for such treatment is a significant and consequential error that infected multiple portions of the ALJ's decision. The error was not harmless.

        *g.*    *The ALJ did not err by giving little weight to Dr. Williams's GAF score opinion.*

The ALJ gave little weight to Dr. Williams's GAF score opinion "because Dr. Williams considered non-medical factors in formulating this score such as unemployment." Tr. 27. Dickens argues that the ALJ improperly rejected the GAF score this basis. ECF No. 16 at 15. Dickens argues that the ALJ properly based the score upon the frequency of Dickens's panic attacks and her resulting inability to maintain employment. *Id.* at 15. The ALJ's finding is supported by the record, and the Court finds no support for Dickens's position that the ALJ cannot reject a GAF score on the basis that the score was assigned with consideration of improper factors.

**2.**    **The ALJ properly found that Dr. Sloop's statement regarding the cause of Dickens's symptoms is speculative.**

The ALJ gave weight to Dr. Sloop's opinion that there is no neurological cause of Dickens's symptoms. Tr. 27. But the ALJ concluded that Dr. Sloop's conclusion that "I think these symptoms are very likely anxiety-related" was speculative. *Id.* Accordingly, the ALJ gave greater weight to opinions that discussed objective findings. *Id.*

Dickens argues that the ALJ improperly rejected Dr. Sloop's conclusion that Dickens's symptoms are related to anxiety. ECF No. 16 at 16. Dickens argues that Dr. Sloop performed a neurological examination and determined that there is

no neurological cause for Dickens's symptoms, Tr. 265–66, and that this is the objective evidence supporting the conclusion that the symptoms are anxiety related. ECF No. 16 at 16. The Commissioner argues that Dickens's argument is misplaced because a plaintiff's symptoms are not objective medical evidence. ECF No. 20 at 13–14.

The ALJ's finding that Dr. Sloop's statement regarding the cause of Dickens's symptoms is speculative is supported by substantial evidence. Dr. Sloop's analysis eliminates neurological issues as a possible cause for Dickens's symptoms, but it does not provide any objective evidence supporting that anxiety is the cause. Indeed, Sloop's opinion does not even find that anxiety *is* the cause of Dickens's symptoms, he merely stated "I think these symptoms are very likely anxiety-related." Tr. 266.

**B.      The ALJ improperly rejected Dickens' symptom testimony.**

Dickens argues that the ALJ failed to provide legally sufficient reasons for rejecting her symptom testimony. ECF No. 16 at 18. Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of her symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily

discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJs may consider many factors in weighing a claimant's credibility, including prior inconsistent statements, unexplained failures to seek treatment, and claimant's daily activities, among others. *Tommasetti*, 533 F.3d at 1039. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

The ALJ found that the objective medical evidence could reasonably be expected to cause some of Dickens's alleged symptoms. Tr. 25. However, the ALJ concluded that the medical evidence demonstrated that she retained the residual functional capacity to perform light, unskilled tasks with limited social interaction. *Id.* That conclusion relies in part on the ALJ's finding that "the record contains several inconsistencies that reduce the credibility of Dickens's allegations." Tr. 26. The ALJ cited four issues as undermining Dickens's credibility: First, Dickens was able to complete a range of daily activities. Second Dickens told Dr. Williams that she had problems with alcohol in the remote past, while Dr. Sloop had opined just six months earlier that Dickens was drinking two to four drinks daily with escalating usage, and recommended that she cease drinking entirely. *Id.* Third, there was no record that Dickens had continued treatment after August 6, 2013, and "there is no crisis related information to show that a high level of dysfunction

has continued." *Id.* And Fourth, Dickens continued to look for work and has received unemployment benefits. *Id.*

The ALJ's reliance on Dickens's daily activities fails because the ALJ does not explain how her daily activities are inconsistent with her alleged symptoms. Daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony or (2) the "claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). However, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Here, the ALJ noted that Dickens is able to complete personal care, can do some cooking and chores, goes outside, and gets along with others. Tr. 23. The ALJ properly relies on these daily activities to find that Dickens does not have a mental impairment that meets or equals a listed impairment, but the ALJ does not explain how Dickens's daily activities are inconsistent with her testimony that she suffers

regular, debilitating anxiety attacks and headaches, during which she is not able to function.

Dickens also argues that the ALJ improperly relied on both receipt of unemployment and her lack of continued treatment after August 2013. Receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime if the claimant holds herself out as available for full-time or part-time work, *see Carmickle*, 533 F.3d at 1161–62, and the ALJ's finding that Dickens received unemployment benefits after her alleged onset date is supported by substantial evidence. However, as the Commissioner concedes, ECF No. 20 at 17–18, and as discussed in section V.A.1.g., the ALJ erred by relying on Dickens's lack of continued treatment after August 6, 2013, because the ALJ did not consider evidence that Dickens lost insurance coverage and had no ability to pay for treatment after that time.

For the reasons already discussed, the Court cannot conclude the ALJ's errors were harmless.

**C.    The ALJ erred to the extent she discredited the lay witness opinion of William Dickens on the basis that Dickens did not continue treatment after August 2013.**

Dickens argues that the ALJ erroneously rejected the lay witness statements of her husband, William Dickens, who explained that Ms. Dickens has significant limitations resulting from her panic attacks and related symptoms. ECF No. 16 at

22. There is no indication that the ALJ rejected Mr. Dickens's testimony. Instead, the ALJ gave his opinion "some weight," while properly giving greater weight to medical sources. Nevertheless, for the reasons discussed above, the ALJ erred to the extent it discredited some of Mr. Dickens's statement as "inconsistent with the claimant's reported activities and lack of continued treatment." Tr. 28. As discussed, and as the Commissioner once again concedes, ECF No. 20 at 20–21, the ALJ improperly relied on Ms. Dickens's failure to continue treatment. And for the reasons discussed, the Court cannot conclude that this error was harmless.

**D.    Remand**

Dickens argues that because the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Williams and Sloop, her symptom testimony, and Mr. Dickens's statements, those opinions and statements must be credited as true. ECF No. 16 at 7, 16, 22. Dickens therefore argues that the Court should remand for an immediate award of benefits. ECF No. 16 at 24. The Commissioner acknowledges that Ninth Circuit precedent allows courts in some circumstances to credit evidence as true, but argues that this precedent is wrong. ECF No. 20 at 22–23. The Commissioner further argues that even accepting the credit-as-true rule, it justifies an award of benefits only in narrow circumstances.

Generally when a court reverses an administrative determination, "'the proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation.'" *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (internal quotation marks omitted)). However, in appropriate circumstances a court may remand a social security case with instructions to calculate and award benefits. *Garrison*, 759 F.3d at 1019 (collecting cases). Remand for payment of benefits is appropriate only if: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison*, 759 F.3d at 1020) (internal quotation marks omitted).

As discussed, here the ALJ has failed to provide legally sufficient reasons for rejecting Dr. Williams's opinion, Dickens's symptom testimony, and William Dickens's statements about Dickens's symptoms. However, the record is not fully developed such that further administrative proceedings would serve no purpose. "This requirement will not be satisfied 'if the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). In this case, it is not clear from

the record that other inconsistencies between the medical evidence in the record and the improperly discredited evidence would not justify denying benefits. Accordingly, it is appropriate to remand this case for further administrative proceedings.

## VI. CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

3. This matter is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this order.

4. **JUDGMENT** is to be entered in the Plaintiff's favor.

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 9th day of February 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge